RACHELE R. BYRD (SBN 190634)
MARISA C. LIVESAY (SBN 223247)
BRITTANY N. DEJONG (SBN 258766)
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
byrd@whafh.com
livesay@whafh.com
dejong@whafh.com

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHIVA STEIN, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| SHUTTERFLY, INC., THOMAS D. HUGHES, WILLIAM J. LANSING, EVA MANOLIS, ANN MATHER, RYAN O'HARA, ELIZABETH S. RAFAEL, ELIZABETH SARTAIN, H. TAYLOE STANSBURY, BRIAN T. SWETTE, MICHAEL P. ZEISSER, | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | |

Plaintiff Shiva Stein ("Plaintiff"), by her attorneys, makes the following allegations against Shutterfly, Inc. ("Shutterfly" or the "Company") and the members of the board of directors of Shutterfly (the "Board" or "Individual Defendants," along with Shutterfly, collectively referred to as the "Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed acquisition (the "Proposed Transaction") of Shutterfly by affiliates of Apollo Global Management, LLC ("Apollo"). The allegations in this complaint are based on the personal knowledge of Plaintiff as to herself and on information and belief (including the investigation of counsel and review of publicly available information) as to all other matters stated herein.

## INTRODUCTION

1. This is an action brought by Plaintiff to enjoin the Proposed Transaction whereby Photo Holdings Merger Sub, Inc., ("Merger Sub"), a wholly owned subsidiary of Photo Holdings, LLC ("Newco"), an affiliate of Apollo, will merge with and into Shutterfly, with Shutterfly continuing as the surviving corporation and as a wholly owned subsidiary of Newco, in the Proposed Transaction for $51.00 in cash for each Shutterfly share owned (the "Merger Consideration"). The Board has unanimously recommended to the Company's stockholders that they vote for the Proposed Transaction at the special meeting of the Shutterfly shareholders. The closing is expected by early fourth quarter of 2019.

2. To convince Shutterfly stockholders to vote in favor of the Proposed Transaction, on July 2, 2019, the Board authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"). The Proxy violates Sections 14(a) and 20(a) of the Exchange Act by noncompliance with Regulation G and SEC Rule 14a-9 (17 C.F.R. § 244.100 and 17 C.F.R. § 240.14a-9, respectively).

3. Defendants have failed to disclose certain material information necessary for Shutterfly stockholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

4. In particular, the Proxy contains materially incomplete and misleading information concerning the financial forecasts for the Company prepared and relied upon by the Board in recommending to the Company's stockholders that they vote in favor of the Proposed Transaction. The same forecasts were used by Shutterfly's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in conducting their valuation analyses in support of their fairness opinions. The Proxy also contains materially incomplete and misleading information concerning certain financial analyses performed by Morgan Stanley.

5. The material information that has been omitted from the Proxy must be disclosed prior to the forthcoming stockholder vote in order to allow the stockholders to make an informed decision regarding the Proposed Transaction.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violations of Regulation G and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, all material information discussed below is disclosed to Shutterfly stockholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated without corrective disclosures, to recover damages resulting from Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8. This Court has personal jurisdiction over each defendant named herein because each defendant is either a corporation that does sufficient business in California or an individual who has sufficient minimum contacts with California to render the exercise of jurisdiction by the California courts permissible under traditional notions of fair play and substantial justice. All of the Defendants conduct business and/or maintain offices in California. The corporate office of Shutterfly is located at 2800 Bridge Parkway, Redwood City, California 94065.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Shutterfly is headquartered in this District.

## PARTIES

10. Plaintiff has owned the common stock of Shutterfly since prior to the announcement of the Proposed Transaction herein complained of and continues to own this stock.

11. Shutterfly is a corporation duly organized and existing under the laws of Delaware and maintains its principal offices in Redwood City, California. Shutterfly is, and at all relevant times hereto was, listed and traded on the NASDAQ Stock Exchange under the symbol "SFLY."

12. Defendant Thomas D. Hughes has been a member of the Board since 2015.

13. Defendant William J. Lansing is the Chairman of the Board and has been a member of the Board since 2017.

14. Defendant Eva Manolis has been a member of the Board since August 2016.

15. Defendant Ann Mather has been a member of the Board since 2013.

16. Defendant Ryan O'Hara is the Company's President and Chief Executive Officer since June 24, 2019 and has been a member of the Board since that date.

17. Defendant Elizabeth S. Rafael has been a member of the Board since 2016.

18. Defendant Elizabeth Sartain has been a member of the Board since 2016.

19. Defendant H. Tayloe Stansbury has been a member of the Board since 2016.

20. Defendant Brian T. Swette has been a member of the Board since 2009.

21. Defendant Michael P. Zeisser has been a member of the Board since 2013.

22. The Defendants referred to in paragraphs 12-21 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

23. The Defendants referred to in paragraphs 11-21 are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

*The Proposed Transaction*

24. On June 10, 2019, Shutterfly announced that it had entered into the Agreement and Plan of Merger (the "Merger Agreement"):

REDWOOD CITY, Calif.--(BUSINESS WIRE)--Jun. 10, 2019-- Shutterfly, Inc. (Nasdaq: SFLY) ("Shutterfly" or the "Company"), a leading retailer and manufacturing platform dedicated to helping capture, preserve, and share life's important moments, today announced that it has entered into a definitive agreement with affiliates of certain funds (the "Apollo Funds") managed by affiliates of Apollo Global Management, LLC (together with its consolidated subsidiaries, "Apollo") (NYSE: APO), a leading global alternative investment manager, pursuant to which the Apollo Funds will acquire all the outstanding shares of Shutterfly for $51.00 per share in cash, or enterprise value of approximately $2.7 billion.

The $51.00 per share cash consideration represents a premium of 31% when compared to Shutterfly's unaffected closing stock price of $38.91 on April 23, 2019, the last trading day before a media report was published speculating that Apollo Funds were considering a bid for the Company. The Shutterfly Board of Directors unanimously approved the agreement with the Apollo Funds and recommends that Shutterfly stockholders vote in favor of the transaction.

"Earlier this year, Shutterfly announced the formation of a Strategic Review Committee to continue the Board of Directors' ongoing review of strategic alternatives for the Company," said William Lansing, Shutterfly's Chairman of the Board. "We ran a broad and comprehensive process, engaging with a significant number of potential buyers, and are pleased that the process culminated in a transaction that maximizes value for Shutterfly stockholders. We look forward to working closely with Apollo as we continue to build a compelling service that enables deeper, more personal relationships for our customers, and to advance our digital and manufacturing capabilities to support sustainable growth."

* * *

Lansing continued, "This transaction is a testament to our outstanding team of talented employees and the company they have built. What began as a digital photo printing company is now a large and diversified business that has successfully evolved with our customers. As we enter this exciting new chapter for Shutterfly, Apollo is an ideal strategic partner, as they will provide additional resources and industry knowledge while we continue to work on our important business initiatives."

In a separate press release issued today, Shutterfly announced the appointment of Ryan O'Hara as its President and Chief Executive Officer, effective June 24, 2019.

**Transaction Details**

The transaction is expected to close by early fourth quarter 2019. The transaction is subject to customary closing conditions, including approval by Shutterfly

stockholders and receipt of clearance under the Hart-Scott-Rodino Antitrust Improvements Act of 1976.

Upon completion of the transaction, Shutterfly will become a privately held company, and its shares will no longer be listed on the NASDAQ Global Select Market.

**Advisors and Financing Providers**

Morgan Stanley & Co. LLC is acting as financial advisor to Shutterfly, and Fenwick & West LLP is acting as its legal counsel.

Financing is being provided by Barclays, Citi and SunTrust Robinson Humphrey, Inc. (or a lending affiliate), who are also serving as financial advisors to the Apollo Funds. LionTree, UBS Investment Bank and Evercore are also serving as financial advisors to the Apollo Funds. Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal counsel to the Apollo Funds.

*The Materially Misleading and Incomplete Solicitation Statement*

25.    On July 19, 2019, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Transaction.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Financial Forecasts*

26.    The Proxy discloses tables for the Management Case and a Management Sensitivity Case (the "Projections").  However, the Proxy fails to provide material information concerning these financial forecasts, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Transaction.  Proxy at 55. These financial forecasts were also relied upon by the Company's financial advisor, Morgan Stanley, in rendering its fairness opinion.

27.    With respect to the Projections, the Proxy fails to provide: (i) the value of certain line

1  items used to calculate Adjusted EBITDA, a non-GAAP measure; and (ii) a reconciliation to its most
2  comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).
3  Proxy at 55.

4      28.    The SEC has indicated that if the most directly comparable GAAP measure is not
5  accessible on a forward-looking basis, the company must disclose that fact, provide any reconciling
6  information that is available without unreasonable effort, identify any unavailable information and
7  disclose the probable significance of that information. A company is permitted to provide the
8  projected non-GAAP measure, omit the quantitative reconciliation and qualitatively explain the types
9  of gains, losses, revenues or expenses that would need to be added to or subtracted from the non-
10 GAAP measure to arrive at the most directly comparable GAAP measure, without attempting to
11 quantify all those items.

12     29.    When a company discloses non-GAAP financial measures in a registration statement
13 that were relied on by a board of directors to recommend that shareholders exercise their corporate
14 suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also
15 disclose all forecasts and information necessary to make the non-GAAP measures not misleading, and
16 must provide a reconciliation (by schedule or other clearly understandable method) of the differences
17 between the non-GAAP financial measure disclosed or released with the most comparable financial
18 measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

19     30.    Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial
20 measures in communications with shareholders. Former SEC Chairwoman Mary Jo White has stated
21 that the frequent use by publicly traded companies of unique company-specific, non-GAAP financial
22 measures (as Shutterfly included in the Proxy here), implicates the centerpiece of the SEC's
23 disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make*

*non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherrypicking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

31. The SEC has repeatedly emphasized that disclosure of non-GAAP forecasts can be inherently misleading and has therefore heightened its scrutiny of the use of such forecasts.[2] Indeed, the SEC's Division of Corporation Finance released a new and updated Compliance and Disclosure Interpretation ("C&DI") on the use of non-GAAP financial measures to clarify the extremely narrow and limited circumstances, known as the business combination exemption, where Regulation G would not apply.[3]

32. More importantly, the C&DI clarifies when the business combination exemption does not apply:

> There is an exemption from Regulation G and Item 10(e) of Regulation S-K for non-GAAP financial measures disclosed in communications subject to Securities Act Rule 425 and Exchange Act Rules 14a-12 and 14d-2(b)(2); it is also intended to apply to communications subject to Exchange Act Rule 14d-9(a)(2). This exemption does not extend beyond such communications. Consequently, if the same non-GAAP financial measure that was included in a communication filed under one of those rules is also disclosed in a Securities Act registration statement, proxy statement, or

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (last visited July 22, 2019) (emphasis added).

[2] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, HARVARD LAW SCHOOL FORUM ON CORPORATE GOVERNANCE AND FINANCIAL REGULATION (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/ (last visited July 22, 2019); Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0 (last visited July 22, 2019).

[3] *Non-GAAP Financial Measures*, U.S. SECURITIES AND EXCHANGE COMMISSION (Apr. 4, 2018), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm#101 (last visited July 22, 2019). To be sure, there are other situations where Regulation G would not apply but are not applicable here.

tender offer statement, this exemption from Regulation G and Item 10(e) of Regulation S-K would not be available for that non-GAAP financial measure.

*Id.*

33. Thus, the C&DI makes clear that the so-called "business combination" exemption from the Regulation G non-GAAP to GAAP reconciliation requirement applies solely to the extent that a third-party, such as a financial advisor, has utilized projected non-GAAP financial measures to render a report or opinion to the Board. To the extent the Board also examined and relied on internal financial forecasts to recommend a transaction, Regulation G applies.

34. Thus, to bring the Proxy into compliance with Regulation G as well as cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

*Financial Analyses*

35. With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy fails to disclose (i) the estimated outstanding shares of Company common stock on a fully-diluted basis, as provided by Company management on June 9, 2019; (ii) the "Street Case" figures; (iii) the source of the "Street Case" figures, including whether the figures were selected analyst projections (and if so, the reason certain figures were included and others excluded) or consensus figures;

36. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy fails to disclose: (i) the basis for Morgan Stanley's selection of the discount rate of 10.0%; and (ii) the basis for Morgan Stanley selecting the range of stock price to free cash flow per share multiples for the comparable companies.

37. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the basis for Morgan Stanley's selection of the discount rate ranging from 7.3% to 8.6%; (ii) the basis for Morgan Stanley's selection of the range of perpetual growth rates ranging from 0% to 2%; and (iii) the total outstanding fully-diluted shares of Company common stock, as provided by the Company management on June 9, 2019.

38. With respect to Morgan Stanley's *Precedent Transactions Analysis*, the Proxy fails to disclose: (i) LTM Adjusted EBITDA multiples for each target company analyzed by Morgan Stanley;

(ii) NTM Adjusted EBITDA multiples for each target company analyzed by Morgan Stanley; and (iii) the individual premiums for the transactions observed by Morgan Stanley in the analysis.

39.  In sum, the Proxy independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to their most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Transaction from Shutterfly shareholders.

40.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff will not be able to make a fully informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**FIRST CAUSE OF ACTION**
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

41.  Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

42.  Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43.  As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the

COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a)
AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934
- 9 -

"most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

44.     The failure to reconcile the numerous non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

## SECOND CAUSE OF ACTION
### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

45.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

46.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading." 17 C.F.R. § 244.100(b).

48.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial forecasts for the Company.

49.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from

the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

50. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

51. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

52. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial forecasts.

53. Shutterfly is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

54. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

55. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**THIRD CAUSE OF ACTION**
**(Against the Individual Defendants for**
**Violations of Section 20(a) of the Exchange Act)**

56. Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

57. The Individual Defendants acted as controlling persons of Shutterfly within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Shutterfly, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing the Proxy.

60. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

61. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants

are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

63. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. In the event that the proposed transaction is consummated, rescinding it and setting it aside, or awarding rescissory damages;

C. Awarding compensatory damages against Defendants, individually and severally, in an amount to be determined at trial, together with pre-judgment and post-judgment interest at the maximum rate allowable by law, arising from the Proposed Transaction;

D. Awarding Plaintiff the costs and disbursements of this action and reasonable allowances for fees and expenses of Plaintiff's counsel and experts; and

E. Granting Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: July 22, 2019

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:  */s/ Rachele R. Byrd*
RACHELE R. BYRD
MARISA C. LIVESAY
BRITTANY N. DEJONG
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Facsimile: (619) 234-4599
byrd@whafh.com
livesay@whafh.com
dejong@whafh.com

**Of Counsel**:

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
GLORIA KUI MELWANI
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

*Counsel for Plaintiff*

SHUTTERFLY:25761